UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BRENDA PROCTOR | CIVIL ACTION |
| VERSUS | NO: 18-4234 |
| WOUND CARE MANAGEMENT, LLC ET AL. | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court are three motions to dismiss. First, Defendants Post Acute Medical, LLC; Post Acute Specialty Hospital of Lafayette, LLC; PAM II of Covington, LLC; Post Acute Medical at Hammond, LLC; Professional Rehabilitation Hospital, L.L.C. f/k/a Promise Hospital of Miss Lou d/b/a Riverbridge Specialty Hospital; LHC Group, Inc.; and LHCG XII, LLC d/b/a Louisiana Extended Care Hospital of Lafayette (collectively, "Facility Defendants") file their *Motion to Dismiss* **(Rec. Doc. 88)**. Relator Brenda Proctor moves in opposition (Rec. Doc. 107), to which Facility Defendants reply (Rec. Doc. 117).

Second, Facility Defendants are joined by remaining Defendants Wound Care Management, LLC d/b/a MedCentris; Wound Care Associates, L.L.C.; and MedCentris Specialty Group (collectively, "MedCentris Defendants") and file their *Motion to Dismiss Relator's First Amended Complaint as Unconstitutionally Initiated* **(Rec. Doc. 90)**. Relator Brenda Proctor moves in opposition (Rec. Doc. 108), to which Defendants reply (Rec. Doc. 118). Additionally, the United States of America files a statement of interest in opposition to Defendants' motion (Rec. Doc. 105), taking no position on Defendants' other motions to dismiss.

1

Third, MedCentris Defendants file their *Motion to Dismiss* **(Rec. Doc. 95)**. Relator Brenda Proctor moves in opposition (Rec. Doc. 106), to which MedCentris Defendants reply (Rec. Doc. 119).

Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motions should be **GRANTED**, **DENIED**, and **GRANTED IN PART**, respectively, in accordance with the reasoning to follow.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises out of wound care treatment performed by MedCentris Defendants at various Louisiana long-term acute care hospitals ("LTACHs"). Facility Defendants, which operate the referenced LTACHs, contracted with MedCentris Defendants to provide wound care services such as debridements, skin substitute procedures, and hyperbaric oxygen therapy. Relator Brenda Proctor, a family nurse practitioner employed by MedCentris from January 2016 to April 2017, raises this *qui tam* action, contending Defendants submitted false claims for Medicare and Medicaid reimbursement, up-coded treatments, and performed medically unnecessary services. Relator describes the multi-layered fraudulent scheme as the "MedCentris Way." Filed in April 2018, the Complaint asserts twelve claims, primarily under the federal False Claims Act ("FCA") but also under federal anti-kickback and referral statues and the Louisiana Medical Assistance Programs Integrity Law ("LMAPIL"). In November 2024, the United States filed notice declining intervention in the litigation.

Defendants now move for dismissal through three motions. All Defendants challenge the constitutionality of Relator's raising a private *qui tam* under the FCA. Additionally, Facility Defendants and MedCentris Defendants separately move to dismiss the respective claims against them for Relator's failure to state a claim. Relator opposes dismissal.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citation omitted).

When a party alleges fraud, however, such claims must be pled with particularity. Fed. R. Civ. P. 9(b). Supplementing the Rule 8(a) standard, Rule 9(b) generally requires the plaintiff to set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir. 2010) (citation omitted). Despite this heightened pleading requirement for fraud claims, the Fifth Circuit counsels that "there is no single construction of Rule 9(b) that applies in all contexts." *U.S. ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 188 (5th Cir. 2009). Specifically, "an FCA claim can meet Rule 9(b)'s standard if it alleges 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (quoting *Grubbs*, 565 F.3d at 190). Such a standard "effectuates Rule 9(b) without stymieing legitimate efforts to expose fraud[,]" and thereby provides "defendants adequate notice of the claims." *Grubbs*, 565 F.3d at 190–91 (observing that "defendants will be in possession of the most relevant records, such as patients' charts, doctors' notes, and internal billing records, with which to defend on the grounds that alleged falsely-recorded services were not recorded, were not billed for, or were actually provided").

## **DISCUSSION**

With three motions to dismiss before the Court, each is taken in turn, beginning with Defendants' common argument against *qui tam* actions brought pursuant to the FCA.

I. **Motion to Dismiss as Unconstitutionally Initiated**

4

Defendants aver the pursuit of an FCA claim by a private person is a violation of the Appointments Clause, Take Care Clause, and Vesting Clause of Article II of the U.S. Constitution. In the statutory language, the FCA provides for *qui tam* suits, their procedure, and the Executive Branch's ultimate authority over the actions:

> Actions by private persons . . . A person may bring a civil action for a violation of [the FCA] for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
>
> . . .
>
> The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

31 U.S.C. § 3730(b)(1), (c)(2)(A) (emphasis omitted). Sitting en banc, the Fifth Circuit has considered the constitutionality of FCA *qui tam* actions. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc). After discussing the history of *qui tam* actions generally and those pursuant to the FCA specifically, the circuit court held that the private right of action does not violate the Take Care or Appointments Clauses of Article II. *Id.* at 752–53, 757–58. Defendants acknowledge this binding authority, albeit in a footnote, with *Riley* placed in a string citation along with decisions by three other circuit courts. (Rec. Doc. 90-1 at 3 n.3).

Undeterred by this Fifth Circuit holding, Defendants direct the Court to a recent order from the Middle District of Florida, which determined an FCA claim raised by a *qui tam* relator violated the Appointments Clause. *United States ex rel.*

*Zafirov v. Fla. Med. Assocs., LLC*, 751 F. Supp. 3d 1293 (M.D. Fla. 2024). The decision is currently under appeal before the Eleventh Circuit Court of Appeals. *Zafirov v. Florida Medical Associates, LLC*, Nos. 24-13581, 13583 (11th Cir.) (briefed and tentatively set for oral argument the week of December 8, 2025). Additionally, Defendants marshal statements by one Fifth Circuit judge and three Supreme Court justices, noting in concurring or dissenting opinions either their disagreements or questions regarding the constitutionality of *qui tam* actions. On these bases, Defendants urge the overturning of binding circuit precedent and the nullification of clear statutory language. This Court declines the invitation.

## II.  Facility Defendants' Motion to Dismiss

With Relator's standing confirmed, the Court turns to Facility Defendants' Motion to Dismiss. As the threshold pleading issue, Relator must include "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Intuitively, the Fifth Circuit has construed the "particularity" requirement to require individualized allegations against named defendants. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (rejecting "group pleading" doctrine in fraud context).

Facility Defendants are a collection of seven LTACHs. Relator asserts each similarly acted to further the fraudulent claim-submission scheme. Specifically, Relator alleges two commonplace actions that set, and then kept, the fraud in motion. First, upon the admittance of a wound patient in an LTACH, the admitting facility

would mark the patient's chart with debridement-related codes. (Rec. Doc. 9 at 49 ¶ 125). The "pre-planned debridements" preceded any patient evaluation by the wound-treating physician, a MedCentris provider. *Id.* Second, with the suggestive debridement codes readying a course of aggressive treatment, Facility Defendants exerted pressure on the MedCentris provider to perform the most LTACH-lucrative treatment. *Id.* at 48–51 ¶¶ 123–29.

The specifics of the scheme, however, are scant. Four of the Facility Defendants—Post Acute Medical, LLC; PAM II of Covington, LLC; Post Acute Medical at Hammond, LLC; and LHC Group, Inc.—are left unmentioned outside of their inclusion in the general facility grouping. Lacking any particularized allegation against them, all four must be dismissed from this seven-year-old litigation.

Of those with individualized mention, Promise Hospital of Miss Lou d/b/a Riverbridge Specialty Hospital faces neither individualized allegations of pre-evaluation debridement coding nor facility harassment. Instead, Relator describes another MedCentris employee "perform[ing]—or at least submit[ing] claims for—nine surgical debridements" on a patient with a "healthy, healing wound". *Id.* at 60 ¶ 156. Based on Relator's review of the medical records, the procedures were "unnecessary". *Id.* Relator also relays the similar treatment of another Riverbridge patient. *Id.* at 60–61 ¶ 157. These episodes, however, do not fall within the alleged scheme of Facility Defendants, nor would they otherwise satisfy the pleading requirements of Rule 9(b). If anything, they show a MedCentris employee making medically unnecessary treatment decisions, leaving this Facility Defendant outside

7

the alleged actions. Lacking any other individualized allegations, the FCA claims against Riverbridge must be dismissed.

Of the two Facility Defendants remaining, only Post Acute Specialty Hospital of Lafayette, LLC is specifically referenced as having admitted a patient with a "pre-planned" debridement code. *Id.* at 56 ¶ 144. It is unclear from the pleadings if treatment provided by a MedCentris provider followed the admission codes, but Relator insists the ultimate submissions were both unnecessary and up-coded. *Id.* at 57 ¶¶ 148–49.

Relator provides more detail, however, on what she considers acts of harassment or pressure. At Post Acute Specialty Hospital of Lafayette, LLC, Relator describes being "routinely pressured" by two facility employees "to prematurely agree to performing surgical debridements and bill deeper, higher-reimbursing debridements." *Id.* at 50 ¶ 128. Similarly, at Louisiana Extended Care Hospital of Lafayette, Relator relays being "admonished" by the facility's wound care team leader for not performing a deeper debridement and for, thereby, "cost[ing] the LHC about $5,000." *Id.* at 50–51 ¶ 129. At the same facility, Relator also received more generalized billing instructions. In a conversation with Relator and MedCentris President Todd Shaffett, Louisiana Extended Care Hospital of Lafayette Case Manager Terrell Savoy explained "the financial importance of MedCentris employees making sure that the LTAC[H] did not encounter [Short Stay Outlier] reductions." *Id.* at 48 ¶ 123.

As to these remaining Facility Defendants, Relator requests too long of an

8

inferential leap to plead an FCA claim. At most, Relator presents two Facility Defendants that requested providers maximize their procedural billings. Nowhere in the pleadings does a Facility Defendant advocate for the submission of a false claim. In her strongest assessment of the scheme's result, Relator "believes this pressure did impact some of her clinical decisions and resulted in falsely inflated government health care payments to Facilities." *Id.* at 50 ¶ 127. Such a "belief," however, falls short of presenting "reliable indicia that lead to a strong inference that claims were actually submitted." *See Grubbs*, 565 F.3d at 190. Accordingly, the FCA claims against Post Acute Specialty Hospital of Lafayette, LLC and Louisiana Extended Care Hospital of Lafayette must also be dismissed.

Finding no scheme to submit false claims by Facility Defendants, Relator's other allegations likewise fail, as they require the particularized pleading of a false claim submitted (Anti-Kickback Statute), a scheme of false certifications (Stark Law), or the same federal standard as that of the FCA (LMAPIL). In sum, Facility Defendants are dismissed from this action.

### III. MedCentris Defendants' Motion to Dismiss

The viability of Relator's claims against MedCentris Defendants, however, presents a closer question. Returning to the operable FCA pleading standard, Relator must include "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. At the motion to dismiss stage, these well-pled particular details are accepted as true.

Relator's First Amended Complaint is replete with factually supported allegations of a claim-submission scheme by MedCentris Defendants. Beginning with her onboarding training, Relator describes policies communicated by MedCentris supervisors that required surgical debridements "without any initial or ongoing assessment of whether surgical debridement or some other debridement procedure was appropriate." (Rec. Doc. 9 at 35 ¶ 91). From her telling, trainees were instructed to perform such procedures on a patient weekly. *Id*. The process was designed to remove the medical decision-making from the provider and vest it in the MedCentris policy. *Id*. Relator reasonably understood the instructions to mandate medically unnecessary but financially lucrative procedures. *Id.* at ¶ 92. Relator received similar instructions for skin substitute treatments. *Id.* at 65–66 ¶¶ 168–69.[1] Within the umbrella of false claims, "claims for medically unnecessary treatment are actionable under the FCA." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). The Court finds that Relator has pled particular details of a scheme to submit false claims.

Relator, further, connects the policy to patient treatment. The First Amended Complaint contains various examples of MedCentris providers treating patients with unnecessary, aggressive, and financially lucrative procedures. Building upon the well-pled scheme, the treatment examples provide reliable indicia leading to a strong inference that claims were actually submitted. Relator's failure to produce a billing

---

[1] Relator's allegations related to a scheme to submit false claims for hyperbaric oxygen therapy, however, lack necessary particularity. (Rec. Doc. 9 at 66–68 ¶¶ 170–178). Generalized, conclusory statements of MedCentris policy—bereft of any support beyond a brief patient exemplar—do not state an FCA claim and must be dismissed.

10

number, amount, or date is not fatal to her FSA claims at this pleading stage. *Grubbs*, 565 F.3d at 189–90 (holding that even at trial "a reasonable jury could infer that more likely than not the defendant presented a false bill to the government, this despite no evidence of the particular contents of the misrepresentation").

MedCentris Defendants insist, however, that Relator fails to plead the requisite scienter for an FCA claim. As a general matter—and as an expression of the elements baked into the oft-repeated standard in *Grubbs*—an FCA claim requires "(1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (i.e., that involved a claim)." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (citation omitted). The Fifth Circuit has, in turn, defined scienter as a defendant who "(1) [had] actual knowledge of falsity, (2) acted with deliberate ignorance of the truth or falsity of the information provided, or (3) acted with reckless disregard of the truth or falsity of the information provided". *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009) (citation omitted). Accepting the well-pled allegations as true, the Court observes a company-wide policy of medically unnecessary procedures, treatment decisions in compliance with those procedures, and reliable indicia of the submission of such false claims. As previously concluded, Relator has pled a false-claims scheme that demonstrates with particularity MedCentris Defendants' requisite knowledge.

Based on the foregoing, Relator adequately pleads against MedCentris Defendants her FCA claims of presentment (Count 1, pursuant to 31 U.S.C. §

3729(a)(1)(A)) and false statement (Count 2, pursuant to 31 U.S.C. § 3729(a)(1)(B)).

She also has pled the parallel or related claims under the LMAPIL: presenting false claims (Count 7, pursuant to Louisiana Revised Statute § 46:438.3(A)); making false statements (Count 8, pursuant to Louisiana Revised Statute § 46:438.3(B)); and submission of claims for medically unnecessary services (Count 11, pursuant to Louisiana Revised Statute § 46:438.3(E)(1)). Unlike Facility Defendants, MedCentrist Defendants do not brief the Louisiana law claims in their motion "to dismiss Realtor Brenda Proctor's First Amended Complaint" in its entirety. (Rec. Doc. 95 at 1). Nonetheless, as acknowledged by the Louisiana Supreme Court, the LMAPIL "was based on the federal False Claims Act[.]" *Caldwell v. Janssen Pharm., Inc.*, 2012-2447 (La. 1/28/14), 144 So. 3d 898, 912. Federal courts assessing false claims actions under both federal and Louisiana law have applied the same standard. *See Albores v. Dimitri*, No. 18-6936, 2025 WL 871601 (E.D. La. Mar. 20, 2025); *Harris v. Seaside HCBS, LLC*, No. 18-994, 2023 WL 2669643, at *4 (M.D. La. Mar. 28, 2023) ("Because the corresponding [L]MAPIL provisions mirror the FCA provisions regarding false or fraudulent claims, the Rule 9(b) particularity requirement applies to claims brought under [L]MAPIL in addition to the FCA."). Here, Counts 7 and 8 parallel the previously discussed FCA claims. Although Count 11—the submission of claims for medically unnecessary services—does not, a violation of the Louisiana provision is pled by Relator based on the foregoing logic. La. Stat. Ann. § 46:438.3(E)(1) ("No person shall knowingly submit a claim for goods, services, or supplies which were medically unnecessary or which were of substandard quality or

quantity.").

Returning to the federal claims, Relator fails to state a further cause of action. For her FCA reverse false claim (Count 3), Relator must show (1) MedCentris Defendants had an obligation to pay money to the government; (2) MedCentris Defendants used a false statement to avoid or decrease that obligation; (3) the false statement was material; and (4) MedCentris Defendants made the false statement knowingly. *U.S. ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*, No. 13-6000, 2014 WL 7274913, at *7 (E.D. La. Dec. 18, 2014), *aff'd*, 626 F. App'x 528 (5th Cir. 2015). "In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." *U.S. ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). As another court of this circuit has summarized, "a defendant's mere failure to refund false claims the Government paid is not actionable as a reverse false claim." *United States ex rel. Ramsey-Ledesma v. Censeo Health, L.L.C.*, No.14-118, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) (collecting cases).

Here, Relator's reverse false claim is completely dependent upon the facts underlying her FCA presentment and false statement claims: "Defendants knew they received substantial amounts of money for wound care services that were medically unnecessary, up-coded, and not performed in compliance with Medicare conditions of payment, yet Defendants took no action to satisfy its obligations to the United States to repay or refund those payments". (Rec. Doc. 9 at 84 ¶ 225). Moreover, Relator has

13

failed to plead with particularity the material false statement MedCentris Defendants knowingly made to reduce their obligations to the federal government. Count 3, accordingly, must be dismissed.

Relator's remaining federal claims likewise fail. As pled, the allegations of FCA conspiracy (Count 4), false claims based on the Anti-Kickback Statute (Count 5), and violation of the Stark Law (Count 6) all rely on a broader scheme involving the participation of Facility Defendants. As previously detailed, this Court rejects the allegations against Facility Defendants for Relator's failure to state a claim on the Rule 9(b) standard. These counts, thus, are also dismissed as to the MedCentris Defendants.

Finally, returning to the unaddressed state law claims, Relator's remaining claims must be dismissed. As previously noted, parties failed to address the Louisiana claims in MedCentris Defendants' Motion to Dismiss. Nonetheless, a district court may dismiss a claim *sua sponte* "as long as the procedure employed is fair." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citation omitted). As a general rule, fairness "requires both notice of the court's intention and an opportunity to respond." *Id.* (citation omitted). A court may dismiss a claim without notice and opportunity to respond, however, where there is no prejudice to the plaintiff. *See Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 (5th Cir. 2010) (finding no prejudice in dismissing non-moving defendants when allegations against them were the same as those against the movants).

Although Relator did not brief her Louisiana state law claims in opposition to

MedCentris Defendants' Motion to Dismiss, she did do so in response to Facility Defendants' motion. (Rec. Doc. 107 at 34–35). In consideration of this trio of motions, Relator's arguments are presented to the Court. Thus, Relator suffers no prejudice through the Court's assessment in the current context. Relator's remaining state law claims—reverse false claim (Count 9), conspiracy (Count 10), and anti-kickback violation (Count 12)—are assessed on the same standard as their federal counterparts. With those federal allegations dismissed, the Court likewise dismisses the state law claims on the same basis.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss Relator's First Amended Complaint as Unconstitutionally Initiated* **(Rec. Doc. 90)** is **DENIED**.

**IT IS FURTHER ORDERED** that Facility Defendants' *Motion to Dismiss* **(Rec. Doc. 88)** is **GRANTED**. Relator's claims against Defendants Post Acute Medical, LLC; Post Acute Specialty Hospital of Lafayette, LLC; PAM II of Covington, LLC; Post Acute Medical at Hammond, LLC; Professional Rehabilitation Hospital, L.L.C. f/k/a Promise Hospital of Miss Lou d/b/a Riverbridge Specialty Hospital; LHC Group, Inc.; and LHCG XII, LLC d/b/a Louisiana Extended Care Hospital of Lafayette are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that MedCentris Defendants' *Motion to Dismiss* **(Rec. Doc. 95)** is **GRANTED IN PART**, as to Counts 3, 4, 5, 6, 9, 10, and

12. Relator's claims against MedCentris Defendants in Counts 1, 2, 7, 8, and 11 remain.

New Orleans, Louisiana, this 25th day of August, 2025.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE